610 So.2d 354 (1992)
Melvin GRIFFIN
v.
STATE of Mississippi.
No. 90-KA-368.
Supreme Court of Mississippi.
December 10, 1992.
Robert E. Buck, Greenville, for appellant.
Michael C. Moore, Atty. Gen., Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
Melvin Griffin was convicted of burglary of a dwelling on December 19, 1986, in the *355 Circuit Court of Bolivar County. The trial court sentenced him to ten (10) years imprisonment with the Mississippi Department of Corrections, as an habitual offender under Miss. Code Ann. § 99-19-81 (1972), said sentence to run consecutively to the sentence imposed in Cause No. 6669, Bolivar County Circuit Court. Griffin seeks reversal on two grounds:
I. The trial judge erred by requiring Griffin to justify his use of peremptory challenges on racially neutral grounds and by reinstating jurors after they were stricken peremptorily by the defendant.
II. The trial court erred by refusing to give Griffin's proposed jury instructions concerning the elements of the crime of burglary.
Finding no reversible error, we affirm.

CASE HISTORY
At about 3:30 p.m. on February 21, 1985, Walter Walker, a resident at the Belgrade Apartments in Cleveland, Mississippi, came home to discover that his apartment had been burglarized. Missing were a television, a VCR, and a video cassette storage box. Walker also discovered a large hole in the wall separating his bathroom from a maintenance hallway.
Kevin Taylor, an accomplice, testified that he and Griffin met in the maintenance hallway "a day or so" before the burglary to plan the crime. On February 21, Taylor entered the maintenance hallway and knocked a hole in the wall on the other side of which lay Walker's apartment. He then summoned Griffin, and the two of them removed Walker's property from the apartment. Two residents in other apartments at the complex saw Griffin and Taylor carrying away Walker's property and identified Griffin at trial.
Griffin and Taylor were charged with the crime on June 6, 1985. Griffin was tried on the charge December 18, 1986.
During the jury selection process, the prosecution exercised four peremptory challenges against black veniremen and one against a white venireman. Griffin, a black, raised a Batson objection, and the prosecution articulated racially neutral reasons for the four challenges against blacks.
Defendant Griffin exercised all of his peremptory challenges against white males. The prosecution raised a Batson objection and asked the court to require Griffin to advance articulable, racially neutral reasons for the challenges. The trial court sustained the prosecution's objection and called upon Griffin to justify his peremptory challenges. Griffin's counsel offered a racially neutral reason for excluding one of the five veniremen, but argued that Batson is inapplicable to criminal defendants and that the court should thus allow the defense to exclude the other four veniremen solely on racial grounds:
BY MR. BUCK: Your Honor, let me preference [sic] about what I might say to you by saying that it is our position in this case and my understanding of the law, the general constitution as well as the law in the Batson case that the defendant is not required to evince any reasons for his peremptory challenges that would justify such a challenge on a non-racial basis, that is to offer it for some reason other than that of race... .
And having said that, I will say that the reason that the defendant exercised its challenges against white males is strictly a matter of strategy in the defense of this case  strictly a matter of strategy. It is strictly a matter of experience of defense counsel in other cases in which counsel has been involved in representing criminal defendants who were black. And that experience has been that white males tend to, more quickly and more readily, convict black males on the basis of race and race alone, irrespective of the proof, in those cases in which I have been involved. The unfortunate fact is that race is very much a part of our life and existence in this country and decisions, all too often, are made on the basis of race. And the only way for the defendant to guard against the possibility of any bias on the part of white males against black males is to try to remove them from the jury to the extent possible. And, therefore, the *356 challenges that we have  and we exercised six challenges, all of which were against white males  was done for a strategic strategy reason and for that reason only. It is our feeling that our chances of prevailing in this case  the defendant is black  are substantially reduced for a jury that is composed of any substantial number of white males. So it is strictly a matter of strategy. And I strictly do not believe that the Supreme Court or constitutional principal would require us to exercise our challenges for non-racial reasons.
The court thereupon rejected four of Griffin's peremptory challenges and reinstated the challenged veniremen to the jury panel.
After hearing the evidence, the jury returned a verdict of guilty.

DISCUSSION

I. DID THE TRIAL JUDGE ERR BY REQUIRING GRIFFIN TO JUSTIFY HIS USE OF PEREMPTORY CHALLENGES ON RACIALLY NEUTRAL GROUNDS AND BY REINSTATING JURORS AFTER THEY WERE STRICKEN PEREMPTORILY BY THE DEFENDANT?
Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), requires that when prosecutors exercise peremptory challenges against members of a distinct racial group, the state must advance articulable and racially neutral reasons for doing so. On appeal, Griffin stands by his previous contention that the Batson rule does not apply to a defendant's peremptory challenges. The United States Supreme Court recently held in Georgia v. McCollum, ___ U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), that Batson applies to both prosecutors and defendants. The Court stated:
Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same  in all cases, the juror is subjected to open and public racial discrimination... . We therefore reaffirm today that the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party.
McCollum takes the wind out of Griffin's sails, essentially holding that what's sauce for the goose is sauce for the gander. The assignment of error is wholly without merit.

II. DID THE TRIAL COURT ERR BY REFUSING TO GIVE GRIFFIN'S PROPOSED JURY INSTRUCTIONS CONCERNING THE ELEMENTS OF THE CRIME OF BURGLARY?
The record reveals that the granted instructions fully addressed the elements of the crime of burglary. This Court has held on numerous occasions that a trial court need not grant an otherwise valid instruction if the subject matter contained in the proposed instruction is adequately covered by an instruction already granted. Turnage v. State, 518 So.2d 1217, 1218 (Miss. 1988); Laney v. State, 486 So.2d 1242, 1246 (Miss. 1986); Billiot v. State, 454 So.2d 445, 461 (Miss. 1984); Groseclose v. State, 440 So.2d 297, 302 (Miss. 1983). Since the refused instructions offered no substance beyond that contained in the granted instructions, the trial court acted within the bounds of its discretion when refraining to accept them.
CONVICTION FOR BURGLARY OF A DWELLING AND SENTENCE OF TEN (10) YEARS IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS AN HABITUAL OFFENDER UNDER MISS. CODE ANN. § 99-19-81 (1972), SAID SENTENCE TO RUN CONSECUTIVELY TO CAUSE NO. 6669, BOLIVAR COUNTY CIRCUIT COURT, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and ROBERTS, JJ., concur.